# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**UNITED STATES OF AMERICA**

**-vs-**  Case No. 6:09-cr-256-Orl-28KRS

**JESUS LAGUNAS-GUTIERREZ**

_____

## ORDER

On December 16, 2009, a grand jury returned an Indictment (Doc. 1) charging Defendant Jesus Lagunas-Gutierrez with illegally reentering the United States in violation of 8 U.S.C. § 1326(a) and (b)(1).[1] Five weeks later, Defendant appeared before a magistrate

---

[1] Subsection (a) of § 1326 provides:

> Subject to subsection (b) of this section, any alien who—
>     (1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding and thereafter
>     (2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act,
> shall be fined under Title 18, or imprisoned not more than 2 years, or both.

Subsection (b)(1) provides: "Notwithstanding subsection (a) of this section, in the case of any alien described in such subsection . . . whose removal was subsequent to a conviction for commission of three or more misdemeanors involving drugs, crimes against the person, or both, or a felony (other than an aggravated felony), such alien shall be fined under Title

judge and entered a plea of guilty to the charge. Before the plea was accepted by the district court, however, Defendant filed a Motion to Withdraw Guilty Plea (Doc. 26) and a Motion to Dismiss Indictment (Doc. 27) based on the statute of limitations,[2] and these motions are now before the Court.

The Court heard argument on the motions on April 13, 2010 and finds that both motions have merit. The Motion to Dismiss is due to be granted because the Indictment was filed more than five years after Defendant was "found in" the United States, and as a result, prosecution is barred by the statute of limitations. The Motion to Withdraw Guilty Plea (Doc. 26) must also be granted because a defendant may withdraw a guilty plea prior to the plea being accepted by the court.

## I. Background

The facts germane to the pending motions are not in dispute. Defendant was born in Mexico and remains a citizen of that country. In 1994, while illegally in the United States, Defendant was arrested on two Florida felony drug charges.[3] (See Ex. A to Doc. 29 at 2-6). After Defendant entered guilty pleas, the state court judge sentenced Defendant to ninety-one days in jail. (See id. at 6-8). On April 13, 1995, Defendant was provided a hearing before a United States Immigration Judge, after which Defendant was ordered excluded and

---

18, imprisoned not more than 10 years, or both."

[2]The Government has filed responses in opposition to these motions. (Docs. 29 & 30).

[3]Unlawful Possession of Cannabis, in violation of section 893.13(6)(a), Florida Statutes (Count I); and Importation of Cannabis Into Florida, in violation of section 893.13(5)(b), Florida Statutes (Count II).

deported from the United States. (See id. at 10). Approximately two weeks later, Defendant was removed from the United States and returned to Mexico. (See id. at 11).

At some point thereafter, Defendant returned to the United States. On April 27, 2001, Defendant's wife, Maria Elena Lagunas, an American citizen, filed a Petition for Alien Relative (Form I-130) with the United States Immigration and Naturalization Service ("INS") seeking a change in Defendant's immigration status because of his marital relationship to her. (See id. at 11-12). The completed I-130 Petition included specific information about Defendant, including his INS alien file number, age, and place of birth. (Id.). The I-130 Petition called for Defendant to explain how he last entered the United States, to which he responded "EWI," meaning that he entered without inspection. (Id.). The Petition specifically stated that Defendant had previously been the subject of an exclusion proceeding in 1994 in Miami, Florida. Defendant and his wife indicated that Defendant's address at the time of filing the Petition was 1760 North Clara Avenue, DeLand, Florida 32720. (Id.). The completed I-130 Petition, along with a photograph of Defendant, was submitted to the INS Center in Mesquite, Texas in April 2001. (See Ex. 1 to Doc. 27). The Government does not challenge the truthfulness of any of the information contained in the I-130 Petition.

On April 16, 2002, INS forwarded the I-130 Petition to its office in Miami, Florida so that the legitimacy of Defendant's marriage could be investigated. At that time, the Miami INS office maintained an Alien file ("A-file")[4] on Defendant, including his immigration history

---

[4]Documents from Defendant's A-file have been submitted as Exhibit A to the Government's Response (Doc. 29) to the Motion to Dismiss Indictment.

and a photograph,[5] and the I-130 Petition was made a part of Defendant's A-file. Information contained in the A-file corroborated the data that Defendant provided in his I-130 Petition; the A-file included documents regarding Defendant's 1994 arrest and the 1995 exclusion and deportation described above.

As a part of its background check regarding the I-130 Petition, INS sent a notice to Defendant and his wife at their DeLand address directing them to appear for an interview with an immigration officer in Miami on November 1, 2002. (Ex. A to Doc. 29 at 14-15). Defendant complied with the instructions and appeared in Miami for the interview. On December 9, 2002, following its investigation of Defendant's marriage, INS granted the Petition and sent its Notice of Approval of Relative Immigrant Visa Petition to Defendant's DeLand address. (Id. at 13).

On December 23, 2002, after the I-130 Petition was granted, Defendant filed a Form I-212 Application for Permission to Reapply for Admission Into the United States After Deportation or Removal. (Id. at 17). In that Application, Defendant again provided correct biographical information and correctly identified his A-file number. Id. He also stated that he had been deported from the United States in May 1995. He again provided INS with his correct address in DeLand, Florida. Approximately seven years after the I-130 Petition and the I-212 Application were filed, the pending Indictment (Doc. 1) was returned against

---

[5]During oral argument on the motions now before the Court, the Government's sole witness—the officer who conducted the interview to determine the bona fide status of Defendant's marriage—was reluctant to admit that the A-file was physically in the Miami office, but she did agree that it was in the possession of the Government and that she had access to it.

Defendant.

## II. Discussion

### A. Motion to Dismiss Indictment (Doc. 27)

Defendant seeks dismissal of the indictment on the basis that it is time-barred. This argument is well-taken.

*1. Commencement of Running of Statute of Limitations*

A specific statute of limitations is not contained in 8 U.S.C. § 1326, and the parties agree that the statute of limitations for violation of that section is the "catch-all" provision of 18 U.S.C. § 3282, which provides that "[e]xcept as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed." However, the parties disagree as to when the five-year limitations period began to run.

Ordinarily, the statute of limitations begins to run when the crime is complete. Toussie v. United States, 397 U.S. 112, 115 (1970). Calculating the date that a violation of § 1326 is complete is somewhat complicated, however, because of the continuing nature of the crime. "[A] violation of § 1326 is a continuing offense that can run over a long period of time, as the offense conduct begins when the alien illegally enters the United States and continues until the alien is actually 'found' by immigration authorities." United States v. Scott, 447 F.3d 1365, 1369 (11th Cir. 2006). The definition of "found" extends beyond arrest and includes constructive notice of a defendant's illegal presence in the United States. Id. "[A]n alien is constructively 'found in' the United States when the government either knows of or, 'with the

exercise of diligence typical of law enforcement authorities, could have discovered the illegality of the defendant's presence.'" Id. (quoting United States v. Clarke, 312 F.3d 1343, 1346 (11th Cir. 2002)). When federal immigration officials have "notice of an alien's presence in the United States, his prior deportation, and his illegal status," there is sufficient notice to begin the running of the limitations period. United States v. Alvarez-Valencia, No. 2:09-cr-166-MEF, 2010 WL 582093, at *1 (M.D. Ala. Feb. 18, 2010) (citing Scott, 447 F.3d at 1370).

The facts pertaining to notice of Defendant's presence in the United States are remarkable. When Defendant and his wife filed the I-130 Petition for Alien Relative, Defendant gave INS his correct INS alien registration number, name, and age. He also told INS that he had previously been the subject of an exclusion proceeding in Miami, Florida and that he had last entered the country "without inspection." Defendant gave also provided INS with his correct address in DeLand, Florida. The information in the Petition was enough to put INS on notice that Defendant was illegally present in the United States. In fact, short of appearing at the door of the INS office and demanding that he be arrested, Defendant could not have done more to let the Government know that he was unlawfully present in the United States.

Apparently, no one at INS read the Petition or the contents of the INS Alien File in which it was placed. The contents of that file would have revealed that Defendant, a Mexican citizen, was a convicted felon who had been deported from the United States. The documents in the file made it obvious that Defendant was illegally in the United States. They independently corroborated what Defendant had disclosed in the I-130 Petition—that he was

in the United States illegally. Defendant has presented a strong showing that INS was on notice that he was illegally present in the United States when it received the completed I-130 Petition on or about April 27, 2001, or, at the very latest, on or about December 9, 2002, when INS approved the Petition. Thus, Defendant was "found in" the United States no later than December 9, 2002, and the five-year statute of limitations began to run at that time. More than five years passed from the time Defendant was found in the United States until the date of the indictment.

The Government correctly argues that deceitful conduct of a defendant might result in reasonable delay by law enforcement in determining that such defendant was illegally in the United States. See United States v. Mercedes, 287 F.3d 47, 55 (2d Cir. 2002). In that type of case, a defendant should not benefit when it is his own "deception and misinformation [that] delay[s] the immigration authorities' discovery of the defendant's illegal presence rather than a lack of diligence on the part of these officials." United States v. Garcia, No. 6:08-cr-81-Orl-19GJK, 2008 WL 2856753, at *11 (M.D. Fla. July 22, 2008). In this case, however, there is no evidence of delay due to Defendant's deceit.

First, the Government's argument that Defendant was deceitful in completing the I-130 Petition by checking the block indicating that he was "excluded" while not also checking the block indicating that he was "deported" rings hollow. The form petition calls for the applicant to indicate whether the relative has "ever been under Immigration proceedings?" If the question is answered "yes", the respondent is given six options to explain the proceedings: "exclusion," "deportation," "recission," and "judicial proceedings." If there is a meaningful distinction among these possible responses, it has not been explained in this

case.  Indeed, even the immigration judge's Memorandum of Oral Decision seems to have used the terms "exclusion" and "deportation" interchangeably.  The heading of that document was specifically modified by deleting reference to deportation to describe the proceedings as "In Exclusion Proceedings Pursuant To 8 U.S.C. 1101 et seq."  This description is consistent with the answer Defendant gave on the I-130 Petition, notwithstanding the standard paragraph in the body of the Memorandum stating that Defendant had been "excluded and deported."

Next, the Government argues that Defendant deceived INS in his I-212 Application when he "denied being detained in an INS facility or jail," (Doc. 29 at 14), but this argument also fails.  It appears that the Government is relying on the fact that, when asked the place of his detention hearing and the facility where he was detained, Defendant responded "N/A." (See Ex. A to Doc. 29 at 17).  On that same page, however, Defendant clearly stated that he had been deported to Mexico in May 1995.  Id.  Deportation is hardly a voluntary act devoid of constraint—in fact, the term "deportation" implies some level of detention. Moreover, it has not been shown that the answer caused INS delay in discovering Defendant's presence in the United States.  Defendant's candid admissions contained in the Petition and Application are inconsistent with an intent to deceive INS as to his illegal status.

The Government's argument that Defendant used the name "Jose Crispin" as an alias in 1982 fares no better.  During 1982, a person using that name was convicted of buying and receiving stolen property in California.  The immigration official responsible for investigating the validity of Defendant's marriage as a part of the I-130 process provided a statement that Defendant's fingerprints match those of the man named Jose Crispin who was convicted in

California nearly twenty years earlier. (Tierney Decl., Ex. B to Doc. 29, ¶ 12). No other evidence has been provided to support a finding that the Defendant and Jose Crispin are the same person, but even if Defendant had prior undisclosed convictions, the fact remains that INS had notice of his illegal presence in December 2002. This information was in the INS A-file all along. There is no reason to conclude that Defendant delayed INS by deceitfully failing to disclose a 1982 conviction under another name.

In sum, the record does not establish that INS was delayed in its work as a result of misstatements or omissions by Defendant. As noted above, for purposes of calculating the running of the statute of limitations, Defendant was "found in" the United States on December 9, 2002. Thus, the prosecution initiated by the Indictment that was filed in December 2009 is time-barred.

### 2. *Waiver of Statute of Limitations Defense*

The running of the statute of limitations is not jurisdictional; it does not operate as a matter of law to extinguish a court's jurisdiction. See United States v. Najjar, 283 F.3d 1306, 1308-09 (11th Cir. 2002). It is instead an affirmative defense that is subject to waiver. Id. The Government maintains that Defendant waived his statute-of-limitations defense when he entered his guilty plea. However, as set forth below, Defendant withdrew that plea before it was accepted by the Court; thus, he did not waive the statute-of-limitations defense by entering that plea.

### B. Motion to Withdraw Guilty Plea (Doc. 26)

The Defendant's Motion to Withdraw Guilty Plea is brought pursuant to Federal Rule of Criminal Procedure 11(d). The Rule provides:

> A defendant may withdraw a plea of guilty or nolo contendre:
> (1) before the court accepts the plea, for any reason or no reason; or
> (2) after the court accepts the plea, but before it imposes sentence if:
> (A) the court rejects a plea agreement under Rule 11(c)(5); or
> (B) the defendant can show a fair and just reason for requesting the withdrawal.

Both parties apparently assume that Defendant's guilty plea has been accepted by the Court and that therefore the Motion to Withdraw is governed by subsection (2) of Rule 11(d). The record, however, reflects that Defendant's guilty plea was never accepted.

On January 22, 2010, Defendant entered his guilty plea before the magistrate judge, and the magistrate judge issued a Report and Recommendation (Doc. 22) recommending that this Court accept the plea. Before this Court considered that recommendation, however, Defendant filed the Motion to Withdraw (Doc. 26) on February 10, 2010. Because the guilty plea was never accepted, the Motion to Withdraw is to be considered under subsection (1) of Rule 11(d), which provides that prior to the Court's acceptance of a guilty plea, a defendant is entitled to withdraw the plea "for any reason or no reason" at all. Id. Therefore, the motion must be granted.

### III. Conclusion

For the reasons set forth above, Defendant's Motion to Dismiss Indictment (Doc. 27) and Defendant's Motion to Withdraw Guilty Plea (Doc. 26) are **GRANTED**. The Report and Recommendation (Doc. 22) is deemed **MOOT**. Defendant's guilty plea is withdrawn and the Indictment (Doc. 1) is **DISMISSED**.

**DONE** and **ORDERED** in Orlando, Florida on this 20th day of May, 2010.

_____
JOHN ANTOON II
United States District Judge

Copies furnished to:
United States Marshal
United States Attorney
United States Probation Office
United States Pretrial Services Office
Counsel for Defendant